R. W. Jackson v. Commissioner.
R. W. Jackson v. Commissioner
Docket No. 12750.
United States Tax Court
1948 Tax Ct. Memo LEXIS 135; 7 T.C.M. (CCH) 523; T.C.M. (RIA) 48141; July 20, 1948
*135 In 1942, 1943, and 1944, petitioner realized income from the operation of rooming houses and apartment buildings owned by him and his wife. He kept single-entry books of account of the rental proceeds received and the expenses incurred in connection with that business. Held, petitioner's gross income and business deductions determined for the three taxable years. Held, further, petitioner did not fradulently file his tax returns with intent to evade tax and that the 50 per cent fraud penalty may not be imposed. James P. Hill, Esq., for the petitioner. Edward L. Potter, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves the following deficiencies and fraud penalties for the calendar years 1942, 1943, and 1944: Item
1942
1943
1944
Income tax deficiency
$2,614.78
$1,975.45
Income & Victory tax deficiency
$7,311.76
50 per cent fraud penalty
1,307.39
3,655.88
987.73
*136 Respondent rejected petitioner's returns, which were based substantially on his books of account, and determined the deficiencies in question on the basis of his bank deposits and withdrawals following certain adjustments thereto. He also determined that petitioner, with intent to evade tax, had fraudulently understated his income for the three taxable years and was subject to the 50 per cent fraud penalty imposed pursuant to section 293(b) of the Internal Revenue Code. The disallowance by the respondent of a standard deduction claimed by petitioner for the year 1944 is not contested. Findings of Fact R. W. Jackson, hereinafter referred to as petitioner, is an individual residing in Jacksonville, Florida. He and his wife, Pearl H. Jackson, filed separate tax returns for the years here involved with the collector of internal revenue at Jacksonville. At the outset of 1942, petitioner was engaged in the operation of a boarding house located at 217 East Monroe Street in Jacksonville. This property, owned by petitioner's wife, was purchased in 1920 and rented by her to petitioner at a monthly rental of $200. Petitioner operated another boarding house located *137 at 303 Market Street in Jacksonville which was owned jointly by himself and his wife and purchased in 1924. At the same time petitioner owned and operated a third boarding house at 219 East Monroe Street in Jacksonville, which he acquired November 13, 1941. On July 31, 1943, petitioner discontinued active management of the three boarding houses. He turned the businss over to a Richardson family who operated them thereafter and paid him $1,200 per month for the remaining five months of 1943, $1,000 per month for the first six months of 1944, and $800 per month for the remainder of 1944. On November 4, 1942, petitioner purchased a four-unit apartment building located at the corner of Park and Cherry Streets in Jacksonville, leasing each apartment at the rate of $35 per month thereafter. In July, 1943, he bought a rooming house at 315 East Monroe Street which he rented thereafter for a monthly rental of $60. Late in 1944 he acquired two additional four-unit apartment buildings situated at Silver and Fourth Streets in Jacksonville. The latter real estate produced $315 of income for petitioner in 1944. Prior to entry of petitioner's son, Gilmer Jackson, into the military service in *138 September, 1942, the latter received income from real estate holdings of his own and from the operation of a local cigar stand. Thereafter, petitioner collected the rents from the realty, recorded the collections in a set of books which he maintained for his son, and deposited the proceeds in his son's bank account under authority of a power-of-attorney. Petitioner's son had operated illegal punchboards at this cigar stand before his Army induction. While a friend continued the operation of the cigar stand, petitioner agreed with his son to handle the punchboards himself until stopped by the law. The son having told him to use the punchboard profits as he saw fit, petitioner deposited these earnings, totaling $1,863.25 in 1942, $2,904.60 in 1943, and $241.65 in 1944, in his own bank accounts. Petitioner maintained bank accounts in which he deposited some of his rental receipts, certain funds either borrowed by him or repaid to him by his wife, payments relating to capital items, and the proceeds derived from the punchboards. Petitioner drew checks on these accounts which were used in part to meet personal and business expenses, to make payments on newly acquired real estate, and *139 to provide funds which he loaned to his wife. Petitioner's total deposits in, and withdrawals from, his own bank accounts during the taxable years are set forth below: 1942
1943
1944
Deposits
$19,647.17
$30,568.75
$20,542.58
Withdrawals
18,194.05
28,139.46
22,735.76 Non-income funds in the amounts of $2,522.78, $5,678.71, and $5,500 were deposited in the respective years 1942, 1943, and 1944, and are included in the total deposits indicated above. In determining petitioner's net income, respondent treated as gross income the deposits set forth in the preceding paragraph; he eliminated what he considered nonincome deposits, allowed the expenses he thought proper by examining checks issued within the year, made allowances for depreciation, estimated living expenses, took into consideration other items not paid by check, and determined petitioner's net income as set forth in the notice of deficiency. In reaching this determination respondent ignored petitioner's books and records. During the taxable years petitioner kept a set of business books and records in connection with his management of the several apartments and rooming and boarding houses *140 in which he recorded the proceeds taken in and the disbursements for operating expenses. These books substantially reflected petitioner's gross income and business expenses for 1942 and 1943, and are as follows: 1942
1943
Receipts
$29,338.20
$30,734.62
Expenses
19,192.15
13,986.91 Petitioner's income from rentals in 1944 was $13,515.00 and his operating expenses for that year were $1,062.81. In addition to the receipts set out above, petitioner received interest in the sum of $104.11 in 1942, dividends or interest of $100 in 1944, and punchboard earnings of $1,863.25 in 1942, $2,904.60 in 1943, and $241.65 in 1944. Petitioner claimed deductions for various items in 1942, 1943, and 1944 in addition to those shown in his books, which were treated by the Commissioner as follows: 1942
Commissioner's
Deductions claimed by
computation of
taxpayer on his returns
same items
Taxes & Licenses
$1,403.16
Interest
141.39
$1,544.55
$1,549.14
Water
190.48
190.48
Insurance
47.52
47.52
1943
Taxes & Licenses
$1,348.31
Interest
226.27
$1,574.58
$1,670.41
Water
95.84
45.42
Insurance
156.22
156.22
1944
Taxes & Licenses
$1,381.08
Interest
336.15
$1,717.23
$2,102.89
Water
12.40
Insurance
179.90
103.43
*141 Petitioner, during the years in question, also paid over to his wife, or credited on her indebtedness to him, the sum of $200 a month as rent for the boarding house situated at 217 E. Monroe Street. Petitioner's income from the operation of his business and from all sources and the expenses incident to his business transactions during the years 1942, 1943, and 1944, weer as follows: 1942
Receipts: Rents
$29,338.20
Interest or dividends
104.11
Punchboard receipts
1,863.25
$31,305.56
Expenses: Operation of boarding house
$19,192.15
Taxes and licenses
1,403.16
Interest
141.39
Insurance
47.52
Water
190.48
Rent
2,400.00
$23,374.70
1943
Receipts: Rents
$30,734.62
Punchboard receipts
2,904.60
$33,639.22
Expenses: Operation of boarding house
$13,986.91
Taxes and licenses
1,348.31
Interest
226.27
Insurance
156.22
Water
95.84
Rent
2,400.00
$18,213.55
1944
Receipts: Rents
$13,515.00
Interest or dividends
100.00
Punchboard receipts
241.65
$13,856.65
Expenses: Operating expenses of properties
$ 1,062.81
Taxes and licenses
1,381.08
Interest
336.15
Insurance
103.43
Rent
2,400.00
$ 5,283.47
*142 Petitioner claimed allowances for depreciation on real and personal property in the amounts of $3,059.55 in 1942, $3,209.55 in 1943, and $3,522.05 in 1944. Included in the properties on which petitioner's claims were based was one property, purchased in 1920 for $18,000, owned by his wife and rented by her to petitioner for $200 a month. Respondent offered in evidence as a basis of allowable depreciation the following schedule: Explanation of Deduction for Depreciation: R. W. Jackson Bldg.
Unrecovered
Cost
Accrued to
Cost
Acquired
Total Cost
Only
12-31-41
12-31-41
303 Market
1-13-25
$20,000.00
$15,000
$15,404.84
None
1215 Boulevard
12- 2-25
28,000.00
21,000
21,273.36
None
219 E. Monroe
11-13-41
6,000.00
4,500
50.00
$ 4,450.00
Park and Cherry
11- 4-42
10,000.00
7,500
None
7,500.00
315 E. Monroe
7-12-43
9,000.00
6,750
None
6,750.00
4th and Silver
9-23-44
20,000.00
15,000
None
15,000.00
Furniture and fixtures
12-31-44
1,550.00
None
1,550.00
Furniture and fixtures
12-31-44
881.41
None
881.41
Furniture and fixtures
12-31-43
458.79
458.79
Totals
$95,890.20
69,750
$36,728.20
$36,590.20
*143 Corrected
Remaining
Depreciation
Life
For
For
For
Reserve
Com-
12-31-41
1942
1943
1944
12-31-44
ment
303 Market
None
None
None
None
$15,404.84
1215 Boulevard
None
None
None
None
21,273.36
219 E. Monroe
33 1/3 Yrs.
$133.50
$133.50
$133.50
450.50
3%
Park and Cherry
40 Yrs.
31.25
187.50
187.50
403.25
2 1/2%
315 E. Monroe
33 1/3 Yrs.
None
101.25
202.50
303.75
3%
4th and Silver
33 1/3 Yrs.
None
None
112.50
112.50
3%
Furniture and fixtures
10 Yrs.
155.00
155.00
155.00
465.00
10%
Furniture and fixtures
10 Yrs.
None
88.14
88.14
176.28
Furniture and fixtures
10 Yrs.
None
None
45.88
45.88
Totals
$319.75
$665.39
$925.02
$38,638.36
Depreciation is allowable for the several years in the amounts set forth in the preceding paragraph. No part of the deficiencies for the taxable years involved herein was due to fraud with intent to evade tax. Opinion ARUNDELL, Judge: The primary question for decision is whether the books and records maintained by petitioner substantially reflected the income realized by him in 1942, 1943, and 1944. The respondent contends that the *144 accounting method employed by petitioner did not accurately disclose his taxable income and that he was required, therefore, by section 41 of the Internal Revenue Code to compute petitioner's tax liability in accordance with such method as in his opinion did truly reflect the income received in the taxable years. During 1942 and the first seven months of 1943 petitioner was engaged in the active operation of three boarding houses. He then transferred the management of these properties to other parties who paid him fixed rental payments during the remainder of the taxable period in controversy. In addition, he acquired and managed three apartment buildings and a rooming house from which he received additional income in the taxable years. Petitioner maintained a set of single-entry books of account in which he itemized the monthly rental payments received from his tenants and the expenditures for operating expenses. Respondent ignored petitioner's records and computed his taxable net income by a bank deposit method whereby gross income was based on total yearly bank deposits, and allowable business deductions (excluding depreciation) were determined from the *145 annual bank withdrawals. The evidence indicates that a sizeable amount of the bank deposits for each year represented non-income items, including inter-account transfers, return of capital, and loan repayments received from petitioner's wife. As a result, the so-called income deposits, total deposits less non-income deposits, totaled $17,124.39 in 1942, $24,890.04 in 1943, and $15,042.58 in 1944. In his tax returns petitioner reported gross income of $28,944.94, $30,734.32, and $13,515 for 1942, 1943, and 1944, respectively. It readily appears from a comparison of these figures that petitioner's gross income for 1942 and 1943, as computed by the bank deposit method, is considerably less than the amounts reported in his return, and shown by his books and testimony. These irregularities cause us to conclude that the bank deposit method is inadequate for purposes of ascertaining petitioner's correct gross income in all of the taxable years here involved. Moreover, we are unable to agree with respondent that petitioner's books are unreliable. We have examined them with care and are satisfied that they, supplemented by other evidence of record, disclose petitioner's entire gross income *146 for the years before us. We are convinced that the earnings derived by petitioner from his son's punchboards are taxable to him. Not only does the conduct of the parties indicate that the funds were intended to belong to petitioner but his liability for tax thereon was conceded on brief. Also, petitioner reported interest income of $104.11 in 1942 and dividend or interest income of $100 in 1944, which are not in issue. In summary, therefore, petitioner's gross income for 1942 totaled $31,305.56 and consisted of interest income of $104.11, punchboard earnings of $1,863.25, and rental receipts in amount of $29,338.20 as reflected by his business records. Petitioner's gross income for 1943, in amount of $33,639.22, included punchboard profits of $2,904.60 and rental receipts of $30,734.62 which were established by his records and oral testimony. With respect to 1944, petitioner's punchboard earnings of $241.65, dividend or interest income of $100, and rental receipts of $13,515, shown by records and testimony, produced a gross income in amount of $13,856.65. In his tax returns for 1942, 1943, and 1944, petitioner claimed business deductions in the respective amounts of $24,705.89, *147 $25,670.58, and $6,692.93. In addition, he erroneously claimed a standard deduction of $500 for 1944 and does not contest respondent's disallowance thereof. Petitioner's books of account, which we think are substantially accurate, disclose expenditures in 1942 of $19,192.15 and in 1943 expenditures of $13,986.91, and these payments constitute ordinary and necessary expenses in carrying on petitioner's business of operating his boarding and rooming houses and other rental property. Included in the total sums deducted for operating expenses by petitioner in his returns for the years 1942, 1943, and 1944 were various amounts representing taxes, interest, water, and insurance. Petitioner's books of account do not reflect these expenditures. It was brought out in the testimony of respondent's accountant, who was responsible for computing petitioner's deductible items under the bank deposit method, that respondent's totals showed "only such items that were deductible as were paid by check." Petitioner testified, and it is only reasonable to assume, that a large share of the routine expenditures incident to the operation of his boarding houses and rental properties was made in cash. *148 It is apparent that respondent's figures, though in some cases in excess of the amount deducted by petitioner in his return, may well be less than the amounts petitioner would have been justified in claiming as deductions. The deficiency notice in the instant case indicates no specific disallowance of the deductions claimed by petitioner in his 1942, 1943, and 1944 returns. Respondent's elimination of these items was incidental to the computation of income on the bank deposit method. It is our opinion that the deductions claimed by petitioner for taxes, interest, water, and insurance in his returns for 1942 and 1943 should be allowed in addition to the other ordinary business expenses reflected in his books. Our conclusion is supported by evidence offered by respondent which would tend to support deductions of similar items in even a larger amount than claimed in the returns. Petitioner has offered no books or testimony in support of the deduction of business expenses for the year 1944, nor has he requested any specific findings relating thereto. Nevertheless, we think he should be permitted to deduct for that year taxes, licenses, and interest in the sum of $1,717.23 as claimed *149 in his return, as respondent's exhibit supports even a larger deduction. Insurance in the sum of $103.43 is likewise deductible based on the concession found in respondent's same exhibit. Petitioner's books do not reflect his operating expenses for 1944 which covered a period when he had his rooming houses rented to the Richardson family. Respondent has found, as disclosed by his own exhibits, that petitioner spent for painting and repairing during 1944, $1,062.81 and even under the bank deposit method has treated this amount as deductible. We think it should be allowed in determining petitioner's tax liability for 1944. In prior years there was an overlap between the bank deposit deductions and the books of account which does not confront us for 1944, and for those years we could make no adjustments as the record stands. We are disposed to accept the depreciation deductions shown by the schedule offered by respondent as petitioner has offered no satisfactory proof that any additional allowance should be made. The allocation of cost between land and buildings on petitioner's properties were in most cases different from the allocation of respondent as indicated in his schedule of *150 depreciation. Petitioner did not prove that respondent's basis was wrong. Petitioner specifically objected to respondent's disallowance of depreciation on "three frame houses" claimed by petitioner in his returns for 1942, 1943, and 1944. The record clearly shows that during these years one of the three properties in question was owned by petitioner's wife and rented by her to petitioner. Moreover, petitioner stated on brief that the allocated cost of this property, acquired in 1920 and depreciated over a life of 20 years, had probably been recovered in 1942. Under authority of section 293(b) of the Code, respondent imposed 50 per cent fraud penalties on petitioner for all of the taxable years. In our judgment, the understatement by petitioner of his income in his tax returns for those years was not fraudulent, with intent to evade tax, and we hold, therefore, that the penalties cannot be sustained. It follows that the forgiveness benefits of the Current Tax Payment Act of 1943 should be accorded petitioner at the recomputation proceeding. In this case an undue burden has been placed on the Court. Books were offered in evidence without even totalling the figures in them. No adequate *151 proposed findings of fact were submitted as required. We have been left to do work which it was the duty of petitioner's counsel to perform. If error has appeared in some detail, it is due to these circumstances. Decision will be entered under Rule 50.